IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VINART MANAGEMENT COMPANY, INC., *et al*, | : |
| Plaintiffs, | : CIVIL ACTION |
| v. | : No. 20-2954 |
| EMPLOYERS MUTUAL CASUALTY COMPANY, | : |
| Defendant. | : |

**MEMORANDUM OPINION**

**Schmehl, J.**  */s/JLS*                                                                                           **July 19, 2021**

**I.      INTRODUCTION**

Before the Court is the motion to dismiss of Defendant, Employers Mutual Casualty Company, improperly named as Employers Mutual Casualty Company d/b/a EMCC Insurance Companies ("EMCC"). Plaintiffs, Vinart Management Company, Inc., Vinart Enterprises, Inc. d/b/a/ Lehigh Valley Acura, PWP Enterprises, Inc. d/b/a Lehigh Valley Honda Hyundai, and Lehigh Valley Motorcars, Inc. d/b/a Mercedes Benz Porsche of Lehigh Valley, (collectively, "Plaintiffs") filed an Amended Complaint against EMCC, asserting that they are entitled to coverage under a Commercial Output Program Policy issued by EMCC (the "Policy") for losses allegedly "caused by the Covid-19 Pandemic" and a series of Orders entered by Pennsylvania Governor Tom Wolf. *See* ECF No. 8. Based upon the parties' submissions and after oral argument being held in this matter, Defendant's motion is granted, and this matter will be dismissed.

## II.     BACKGROUND

### A.  The Policy

Plaintiffs seek coverage under a Commercial Output Program Policy issued by EMCC for the policy period May 1, 2019 through May 1, 2020 that provided specified property coverage for Plaintiffs' business. *See* ECF No. 8 at ¶ 19. The Property Covered section of the Commercial Output Program Policy states:

> "We" cover direct physical loss to covered property at a "covered location" caused by a covered peril.

*Id.*, Ex. A at 136. The Perils Covered section of this Coverage Part states:

> "We" cover direct physical loss unless the loss is limited or caused by a peril that is excluded.

*Id.*, Ex. A at 336. The Perils Excluded section of this Coverage Part states:

> 1. "We" do not pay for loss or damage caused directly or indirectly by one or more of the following excluded causes or events. Such loss or damage is excluded regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.
>
>                                     * * *
>
> 2. "We" do not pay for loss or damage that is caused by or results from one or more of the following excluded causes or events:
>
>                                       * * *
>
>     j. Loss of Use – "We" do not pay for loss caused by loss of use, delay, or loss of market.

*Id.*, Ex. A at 136, 140.

The Policy includes a Virus or Bacteria Exclusion set forth in a separate Endorsement. The Endorsement contains a notice at the top of the Endorsement, which states:

> This endorsement changes the policy
>
> ## -- PLEASE READ THIS CAREFULLY –
>
> ## VIRUS OR BACTERIA EXCLUSION

*Id.*, Ex. A at 118 (emphasis in original). The Endorsement then states, in relevant part, as follows:

> The additional exclusion set forth below applies to all coverages, coverage extensions, supplemental coverages, optional coverages, and endorsements that are provided by the policy to which this endorsement is attached, including, but not limited to, those that provide coverage for property, earnings, extra expense, or interruption by civil authority.
>
> 1. The following exclusion is added under Perils Excluded, item 1.:
>
> **Virus or Bacteria** –
>
> "We" do not pay for loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.
>
> This exclusion applies to, but is not limited to, any loss, cost, or expense as a result of:
>
> a. any contamination by any virus, bacterium, or other microorganism; or
>
> b. any denial of access to property because of any virus, bacterium, or other microorganism.

*Id.* EMCC also includes coverage for certain lost business income under the Commercial Output Program Income Coverage Part of the EMCC Policy:

> 1. **Interruption by Civil Authority** – "We" extend "your" coverage for earnings and extra expense to include loss sustained while access to "covered locations" or a "dependent location" is specifically denied by an order of civil authority. This order must be a result of direct physical loss of or damage to property, other than at a "covered location" and must be caused by a covered peril. Unless otherwise indicated on the "schedule of coverages", this Income

>     Coverage Extension is limited to 30 consecutive days from the date of the
>     order.

*Id.*, Ex. A at 151.

### B. The Shut Down Orders

In March of 2020, the World Health Organization declared COVID-19 to be a global pandemic. On March 6, 2020, Pennsylvania Governor Tom Wolf issued a Proclamation of Disaster, the first formal recognition of an emergency situation in Pennsylvania due to COVID-19. From March 19, 2020, to June 4, 2020, Governor Wolf and the Pennsylvania Department of Health issued numerous orders requiring, *inter alia*, "non-essential" businesses such as automobile dealers to suspend operations. (ECF No. 8, Exs. B-J.)

On May 8, 2020, Governor Wolf specifically issued an order regarding sales of vehicles. Notably, part of the guidance related to that order stated as follows:

>     Automobile and other motor vehicle dealers were not permitted to continue
>     physical operations under the Governor's and Secretary of Health's March 19,
>     2020, Business Closure Orders.

(ECF No. 8, Ex. K.)

### III. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) governs the Court's motion to dismiss analysis. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc*., 662 F.3d 212, 220-21 (3d Cir. 2011) (*citing Iqbal,* 556 U.S. at 678). While the plausibility standard is

4

not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (*quoting Twombly*, 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "[i]t must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (*quoting Iqbal*, 556 U.S. at 675, 679). *See Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010).

In our analysis of a motion to dismiss, the Court of Appeals allows us to also consider documents "attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public records, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

The interpretation of an insurance contract ordinarily is a matter of law to be decided by a court. *See, e.g., Nationwide Mut. Ins. Co. v. Arnold*, 214 A.3d 688, 695 (Pa. Super. Ct. 2019). Accordingly, courts in this District routinely dismiss complaints in insurance coverage actions based on exclusions in the insurance policy. *See, e.g., Mark I Restoration Svc v. Assurance Co.*

*of Am.*, 248 F. Supp. 2d 397, 405 (E.D. Pa. 2003) (granting insurer's 12(b)(6) motion because the plain and unambiguous language of the pollution exclusion in the policy precluded coverage for the claimed loss); *Certain Underwriters at Lloyd's London v. Brownie's Plymouth*, 24 F. Supp. 2d 403, 405 (E.D. Pa. 1998) (granting insurer's 12(c) and 12(b)(6) motion because the "assault & battery/negligent hiring" exclusion in the policy was clear and unambiguous and precluded coverage).

### IV.   DISCUSSION

The Policy in this matter contains a Virus or Bacteria Exclusion excluding from coverage any "loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress." *See* ECF No. 8, Ex. A at 118. The Exclusion states that it "applies to all coverages . . . that are provided by the policy . . . including, but not limited to, those that provide coverage for . . . earnings . . . or interruption by civil authority." *Id.* Moreover, the Policy further provides that there is no coverage for "loss or damage caused directly or indirectly" by excluded causes and events and that "[s]uch loss or damage is excluded regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events." *Id.*, Ex. A at 136.

There can be no legitimate dispute that COVID-19 is a virus capable of inducing illness or disease. It is identified as a "viral illness" in *Friends of Devito v. Wolf*, 227 A.3d 872, 887, 888 (Pa. 2020). Further, the acronym of COVID itself contains the word virus, as it stands for "coronavirus disease." As stated by my colleague Judge Bartel, "[t]here is no other way to characterize COVID-19 than as a virus which causes physical illness and distress." *Brian Handel*

*D.M.D., P.C. v. Allstate Ins. Co.*, 499 F. Supp. 3d 95, 100 (E.D. Pa. 2020). It is clear that coverage for Plaintiffs' losses due to COVID-19, a virus, is barred by the Virus or Bacteria Exclusion.

Plaintiffs attempt to avoid the application of the Virus and Bacteria Exclusion by claiming that it should not apply because Plaintiffs pled that "the COVID-19 pandemic and accompanying Civil Authority Orders caused its [sic] losses and not the virus itself." *See* ECF No. 13 at 20. It is irrelevant how Plaintiffs pled their losses in the Amended Complaint, as "conclusory allegations" in a complaint "are not entitled to assumptions of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 225 (3d Cir. 2011). Further, Plaintiffs' contention is also fundamentally inconsistent with the policy language at issue. The Virus or Bacteria Exclusion states that is applies to (1) coverage for interruption by civil authority and (2) any loss, cost, or expense as a result of any denial of access to property, and is excluded if it is "caused directly or indirectly" by a virus. Coverage remains excluded even if "other causes or events that contribute to or aggravate the loss." As Plaintiffs' Amended Complaint claims that their alleged business losses were the direct result of "the COVID-19 Pandemic, and the accompanying entry of Civil Authority Orders," it is clear that a straightforward application of the policy language bars Plaintiffs' claims for coverage in this matter.

Plaintiffs next attempt to avoid the application of the Virus Exclusion by claiming that the exclusion is contrary to their reasonable expectations. However, under Pennsylvania law, "an insured cannot validly assert that its understanding or 'reasonable expectation' of coverage, uncommunicated to the insurer, should control over the plain language of the insurance agreement." *See MDL Capital Mgmt. Inc. v. Fed. Ins. Co.*, 2006 WL 2974165, at *9 (W.D. Pa. Oct. 16, 2006) (citation omitted), *aff'd in part and rev'd in part on other grounds*, 274 F. App'x

7

169 (3d Cir. 2008). In addition, courts have found that the reasonable expectations doctrine "is only applied in very limited circumstances to protect non-commercial insureds from policy terms not readily apparent and from insurer deception." *Canal Ins. Co. v. Lloyd's London*, 435 F.3d 431, 440 (3d Cir. 2006). It is clear that Pennsylvania courts have further declined to apply the reasonable expectations doctrine where the insured used a broker to purchase insurance for its business. *MDL Capital Mgmt.*, 2006 WL 2974165 at *9.

The facts of the instant matter clearly show that the reasonable expectations doctrine does not apply. Plaintiffs are commercial insureds who used an insurance broker to obtain the policy in question. *See* ECF No. 8, ¶ 9, Ex. A at 1. As such, they simply cannot defeat the plain and unambiguous terms of the Policy and their reasonable expectations argument fails.

Lastly, Plaintiffs argue that the Virus or Bacteria Exclusion violates public policy as a contract of adhesion and thus is unenforceable. However, a review of the Amended Complaint shows that it is completely devoid of any facts that would support Plaintiffs' contention that the exclusion is unconscionable. A bare bones conclusory allegation that the exclusion is unconscionable does not satisfy the pleading standard under Federal Rule of Civil Procedure 8. *See Hepler v. Transamerica Premier Life Ins. Co.*, 2019 WL 4854133, at *4 (E.D. Pa. Sept. 30, 2019). Accordingly, this argument must also fail.

The virus and bacteria exclusion in this matter unambiguously bars coverage for plaintiff's claims due to COVID-19. This holding is in line with numerous other courts in this District, who have found similar virus exclusions to have barred coverage for COVID-19 related shutdowns. *See Toppers Salon & Health Spa, Inc., v. Travelers Property Cas. Co. of America*, 503 F.Supp.3d 251, 255-256 (E.D. Pa. Nov. 30, 2020); *Kessler Dental Associates, P.C., v. The Dentists Ins. Co.*, 505 F.Supp.3d 474, 478-479 (E.D. Pa. Dec. 7. 2020); *Newchops Restaurant*

*Comcast, LLC d/b/a Chops v. Admiral Indemnity Co.,* 507 F.Supp.3d 616 (E.D. Pa. Dec. 17, 2020); *TAQ Willow Grove, LLC, v. Twin City Fire Ins.*, 2121 WL 131555, at *7-8 (E.D. Pa. Jan. 14, 2021); *Wilson v. Hartford Cas. Co*. 492 F.Supp.3d 417, 427 (E.D. Pa. Sept. 30, 2020). As the Virus and Bacteria Exclusion applies here, I do not need to decide whether Plaintiffs' claim falls within the scope of coverage. Accordingly, EMCC's motion to dismiss is granted.

## V.    CONCLUSION

For all the foregoing reasons, I find that Plaintiffs' Amended Complaint fails to state a claim, Defendant's Motion to Dismiss is granted, and Plaintiffs' Amended Complaint is dismissed with prejudice.